

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0819-12

### ROBERT RANDALL KRAUSE, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### HARRIS COUNTY

**PRICE, J., filed a dissenting opinion in which WOMACK, J., joined.**

### DISSENTING OPINION

Rachel Lopez was not a physician, chemist, registered professional nurse, or licensed

vocational nurse. If she was authorized to draw the appellant's blood under the statute, it

could only be by virtue of her status as a "qualified technician."[1] The statute does not define

---

[1] *See* TEX. TRANSP. CODE § 724.017(a) ("Only a physician, qualified technician, chemist, registered professional nurse, or licensed vocational nurse may take a blood specimen at the request or order of a peace officer under this chapter.").

this term, but it does expressly provide that it "does not include emergency medical services personnel."[2] Lopez received her training in blood extraction in her capacity as an Emergency Medical Technician-Intermediate (EMT-I).[3] Insofar as the record reveals, she has no training to draw blood in any other capacity.[4] Thus, while Lopez may be perfectly competent to do so, I agree with the court of appeals that the statute plainly excludes her from drawing blood for purposes of Chapter 724 of the Transportation Code.[5]

Even so, the Court holds today that the court of appeals erred to rely on this plain language from the statute because Lopez's experience in drawing blood, and the hospital

---

[2] *See* TEX. TRANSP. CODE § 724.017(c) ("In this section, 'qualified technician' does not include emergency medical services personnel.").

[3] The trial court expressly found that, "[a]s an EMT-I, [Lopez] is trained to draw blood[.]"

[4] As Judge Johnson points out in her concurring opinion, the Texas Health and Safety Code specifically defines "emergency medical services personnel" to include "emergency medical technicians—intermediate." Concurring Opinion at 2 (citing TEX. HEALTH & SAFETY CODE § 773.003(10)(C)). Thus, Lopez unquestionably constituted "emergency medical services personnel" in contemplation of the Transportation Code provision at issue here. The State did not contend otherwise in the court of appeals, declining to argue "that the statutory phrase 'emergency medical services personnel' cannot encompass a licensed 'emergency medical technician-intermediate' such as Lopez." *Krause v. State*, 368 S.W.3d 863, 866 (Tex. App.—Houston [14th Dist.] 2012. "Rather, the State contends that an emergency medical technician who works in a hospital and regularly performs blood draws should not be classified as 'emergency medical services personnel' for purposes of" the Transportation Code. *Id.* For the reasons that follow, I disagree.

[5] *Krause*, *supra*, at 866-70. Indeed, if it were not the case that at least *some* emergency medical services personnel are competent to draw blood for Chapter 724 purposes, there would have been no need for the Legislature expressly to exclude them from this function, since it would presumably have been clear that they could never constitute "qualified technicians" under Section 724.017(a).

setting in which she had done so for her six years of employment there, rendered her "a *de facto* phlebotomist"—and phlebotomists have been held to satisfy the criteria for a "qualified technician" under the statute.[6]  But there was no evidence that Lopez had been trained or certified specifically as a phlebotomist.[7]  Suppose that, as part of her six years' employment at the hospital, Lopez had been serving as a *de facto* nurse, chemist, or even physician.  I do not think it likely the Court would hold that she was authorized to draw blood for Chapter 724 purposes in any of *those* capacities.  It is not clear to me why a *de facto* phlebotomist should count as a "qualified technician"—especially one who received her training in the extraction of blood only as an EMT-I, given that emergency medical services personnel are

---

[6]

*See* Majority Opinion at 6-8 (citing *Cavazos v. State*, 969 S.W.2d 454, 456 (Tex. App.—Corpus Christi 1998, pet. ref'd) (the State must show that a particular "phlebotomist" is "qualified" to draw blood in order to satisfy Section 724.017(a)); *Torres v. State*, 109 S.W.3d 602, 605 (Tex. App.—Forth Worth 2003, no pet.) (certified phlebotomist is a "qualified technician" for purposes of Section 724.017(a)); *State v. Bingham*, 921 S.W.2d 494, 495-96 (Tex. App.—Waco 1996, pet. ref'd) (witness was a "qualified technician" for Chapter 724 purposes by virtue of testimony that she was a trained and experienced phlebotomist).

It is telling that, in its articulation of the standard by which we conduct statutory construction, the Court makes no mention of the principle that, while effectuating legislative intent is the ultimate goal, the literal language of the statute, when plain, is the best indicator of that intent. *E.g.*, *Tapps v. State*, 294 S.W.3d 175, 177 (Tex. Crim. App. 2009).  *See* Majority Opinion at 6.

[7]

There was testimony in *Bingham* that phlebotomists are not subject to licensing requirements in Texas.  921 S.W.2d at 496.  Insofar as my research reveals, that is still the case. *But see* TEX. CIV. PRAC. & REM. CODE § 104.001 (providing for indemnity by the State under certain circumstances to "a phlebotomist licensed in this state . . .").  Nevertheless, phlebotomy is a discrete discipline, subject to formal classroom training by accredited institutions, minimum supervised clinical experience, and an exam for certification.  *See*, *e.g.*, AMERICAN SOCIETY OF PHLEBOTOMY TECHNICIANS, *Phlebotomy Certification* (last visited May 6, 2013), http://aspt.org/phlebotomy.html. There is no evidence in the record that Lopez satisfied any of these criteria.

expressly excepted from the category of "qualified technician."

I do not mean to suggest that, had the evidence shown that Lopez was *both* an EMT-I *and* a certified phlebotomist, the appellant's motion to suppress should still have been granted. Not at all. That the term "qualified technician" may not be construed to "include emergency medical services personnel" does not necessarily mean that someone who is trained as *both* an EMT-I *and* a certified phlebotomist may not draw blood under Chapter 724. At best, Section 724.017(c) is ambiguous with respect to this particular question, and I very much doubt that the Legislature would wish us to construe it to rule out a certified phlebotomist who also just happened to be an EMT-I. But the State did not establish that Lopez was actually trained as a phlebotomist, *per se*, and I am no more inclined to think that the Legislature intended to authorize Chapter 724 blood draws from *de facto* phlebotomists than from *de facto* doctors, chemists, or nurses.

I suspect that the Court is influenced in its consideration of this case by what it regards as the evident purpose behind Section 724.017(c). The Legislature has expressly provided that "[t]he blood specimen must be taken in a sanitary place."[8] Obviously, the Legislature did not prefer for Chapter 724 blood draws to be conducted amidst the chaos and questionable cleanliness of a roadside accident scene, in the back of a barreling ambulance, or, as in *State v. Laird*,[9] on the filthy floor of a fire station—conditions under which

---

[8] TEX. TRANSP. CODE § 724.017(a).

[9] 38 S.W.3d 707 (Tex. App.—Austin 2000, pet. ref'd).

emergency medical service personnel are sometimes constrained by exigency to operate. But, the Court seems to reason, because of Lopez's apparent competence and the fact that all of her blood draws take place in the relatively tranquil and antiseptic environment of a hospital, she may be found to fit the definition of "qualified technician," notwithstanding Section 724.017(c)'s express exclusion of emergency medical services personnel from that definition. Like the court of appeals, I reject this reasoning.[10] Assuming that assuring safety and sanitation was indeed the impetus for the Legislature's express exclusion of emergency medical services personnel from the definition of "qualified technician," it was certainly within the legislative prerogative to take a categorical view of the matter and paint with a brush that was broader than strictly necessary to achieve its objective. That is what Section 724.017(c) plainly does; it categorically prohibits EMT-Is from drawing blood, though many of them are competent to do so and can often get it done under conditions that are perfectly safe and sanitary. The Court may prefer a lighter touch, but that is not for us to say when the language of a statute is as plain—and plainly categorical—as this one.[11]

Under Section 724.017(c), emergency medical technicians *qua* emergency medical technicians may not extract blood for purposes of Chapter 724 of the Transportation Code. Because that was the only capacity in which Lopez was trained to perform blood draws, she

---

[10]

*Krause*, *supra*, at 869.

[11]

*See Tapps*, *supra*, at 177 (unambiguous statutes must be understood to mean what they say, and it is not for reviewing courts to add or subtract from their clear language).

is plainly excluded from serving in that function.  I would therefore affirm the judgment of the court of appeals.  Because the Court does not, I respectfully dissent.


FILED:              May 8, 2013
PUBLISH